# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 9308 | DATE | 5/3/2004 |
| CASE TITLE | DAVID CORDER vs. JO ANNE BARNHART | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment [14-1] is granted in part. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion. Defendant's motion for summary judgment [20-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 10 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 5/3/2004 | |
| | | | date mailed notice | |
| CB | courtroom deputy's initials | | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID CORDER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 9308 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| JO ANNE BARNHART, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

David Corder seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g). The parties move for summary judgment pursuant to Fed. R. Civ. P. 56.

## PROCEDURAL BACKGROUND

Corder is 45 years old. R. 486. He has been unemployed since 1986 when he first filed for disability. He filed applications for SSI and Disability Insurance Benefits ("DIB") on June 1, 1993, amending his onset date to October 1, 1992. R. 37-40, 41-44. The Commissioner denied his claims and Corder requested a hearing before an administrative law judge ("ALJ"). Following a hearing, the ALJ denied Corder's claims. The Appeals Council set this decision aside on April 2, 1997. On remand, the ALJ issued a second decision finding that Corder was not disabled and was capable of performing light work with certain non-exertional limitations. R. 10-27. Once again, Corder sought review. After the Appeals Council denied Corder's request for review, he filed a complaint in the Northern District of Illinois. This court reversed the Commissioner's final decision and remanded

1



the matter for further proceedings to make a finding regarding the extent of Corder's impairments, the extent to which those impairments impact his ability to work, and the work available given those limitations. *Corder v. Halter*, No. 00 C 2714, 2001 WL 477210, at *1 (N.D. Ill. May 4, 2001). On remand, Corder's claim was assigned to another ALJ. The ALJ held two administrative hearings; she heard testimony from Corder and a medical and vocational expert. R. 482-529, 530-48. The ALJ denied Corder's application for SSI. The Appeals Council declined jurisdiction, leaving the ALJ's decision as the final decision of the Commissioner.

## BACKGROUND

### 1. Physical History

Corder has complained of lower back pain since he was 25 years old. He completed 10th grade, which is classified as a limited education. R. 476. His scores on achievement tests administrated during his treatment suggest his aptitude is lower. *Id.* Corder has been unemployed since 1986, but his past relevant employment included factory work and serviceman. This work involved frequent walking, standing, bending and lifting. Corder has a history of alcohol abuse. In 1993, he reported that he drank up to 24 beers a day. R. 112. However, Corder has been sober since April 1, 1995.

Corder's most significant injury and symptoms arise from lower back and respiratory problems. At the May 7, 2003 hearing before the original ALJ, Corder testified that he often has difficulty rising out of bed in the morning and that it is painful for him to sustain any standing or sitting activity for more than 15-30 minutes at a time. R. 497-500. He stated that it is uncomfortable for him to drive or sit for long periods of time and that he must frequently stand or lie down to relieve the strain on his back. *Id.* He also lies down because his pain medication makes him tired.

*Id.* On a typical day, he would do light housework and cook. *Id.* He washes out the tub. *Id.* He takes walks outside to the store - about three blocks away - stopping along the way due to back symptoms. *Id.* He can lift and carry 15 pounds. *Id.* About twice a week, he goes to the grocery store. *Id.* During the summertime, he goes fishing approximately every other day. *Id.*

Medical evidence supports Corder's complaints. In 1993, an examination by Dr. Odland revealed a "tender sacroiliac, right greater than left, straight leg raising at 30 degrees." R. 204. Odland prescribed Naprosyn and Tylenol #3 for pain. *Id.* A month later, Odland diagnosed multiple episodes of lumbosacral pain. An x-ray suggested degenerative changes. R. 119. Odland opined that Corder's work could not include lifting, carrying or bending. R. 120. In 1995, another x-ray revealed "hypertrophic degenerative changes ... at multiple levels ... degenerative changes ... at multiple levels ... degenerative disc space narrowing at L4-L5 with sclerosis of the adjacent vertebral body end-plates." R. 334.

In 1998, Dr. Irwin Feinberg conducted an orthopedic examination of Corder at the ALJ's request. R. 380-383. Feinberg reported that Corder's chief complaints involved asthma, painful lower left back, and a malunion of a left rib fracture that causes pain on contact. R. 380. Feinberg found that Corder suffered from symptomatic degenerative arthritis of the lumbosacral spine, bronchial asthma and degenerative disc disease of the cervical spine. R. 382. Feinberg noted that Corder's range of motion was restricted. R. 380-81. In his medical assessment of ability to perform work-related activities, Feinberg restricted Corder's ability to lift and/or carry to 10-15 pounds frequently and 15-20 pounds occasionally, due to lower back pain. R. 384. Feinberg found that Corder's ability to stand, walk, and sit were unaffected by his impairment. *Id.* He stated that Corder

3

could climb, balance, kneel or crawl "occasionally" during an 8-hour day. R. 385. Feinberg noted Corder was capable of frequently stooping or crouching. *Id.*

On December 27, 2002, Dr. Raman Popli examined Corder. Popli noted that Corder's speech was slightly slurred, but that the slurring did not interfere with the interview. R. 722. Popli found Corder's joints were normal with a normal range of motion. R. 723. His examination of Corder's cervical spine showed a slight reduction of the normal lumbar lordosis. R. 723. Summarizing Corder's condition, Popli opined that Corder suffered from some reduction in extension and sideward flexion at the lumbosacral spine. R. 723. Popli found Corder's physical condition, combined with his painful symptoms, limited his ability to work. He stated that "as per the claimant," Corder could carry ten pounds occasionally and less than ten pounds frequently. Popli also noted that according to Corder, his pain limited his ability to stand and walk to less than two hours per day. *Id.* However, Popli noted these restrictions were based on Corder's "claims of having back pain if he exceeds the limits described above. There are not any objective findings to back his claims other than limitation of extension and sideward flexion at the LS spine." R. 725.

Corder's most recent treating physician, Dr. Bowser, noted in January 2003 that Corder's thoracic and lumbar muscles were markedly tender and that the range of motion of his back was restricted in all directions. R. 731. Bowser reported that Corder complained of pain whenever he was required to sit or stand for more than 30 minutes at a time. *Id.* Bowser also noted that Corder complained of inability to stoop, bend, or lift because of pain. *Id.* Based on his medical findings and Corder's complaints, Bowser opined Corder was unable to sit or stand for more than 30 minutes, bend, stoop, climb ladders, do overhead work, or lift more than five pounds. *Id.*

4

## 2. Mental Health History

Corder contends his ability to work is limited by his limited mental capacity. Corder has been examined by numerous mental health professionals since filing his disability claim. In 1993, Dr. Diamond, a psychologist, examined Corder. Diamond reported that Corder was depressed. R. 159. Diamond administered a WAIS-R IQ test. Corder scored 71 verbal, 76 performance and 72 full scale. *Id.* His WRAT scores were also low. Corder was found to possess below third grade reading and spelling skills. R. 161. Corder had the math skills of a fifth grader. *Id.* According to Diamond, Corder possessed poor reasoning skills and a limited vocabulary. *Id.* On May 21, 1997, Dr. Mary Gardner examined Corder and diagnosed him as possessing borderline intellectual functioning. R. 248-52. Gardner administered the WAIS-R IQ and WRAT tests. R. 250. The results were similar: 74 verbal; 74 performance; 73 full scale; fourth grade reading; fifth grade math. *Id.* Gardner noted that Corder had memory problems. She stated that Corder's ability to remember locations, work-like procedures and to concentrate was limited. R. 263.

At the hearing before the second ALJ, Dr. Daniel Schiff, a psychiatrist, testified as a medical expert. He testified that prior to 1995, Corder was addicted to alcohol. R. 516. Schiff assessed Corder's intellectual abilities as borderline with IQ scores in the 70's. R. 517. He stated Corder was capable of one and two-step operations that did not require intensive concentration or long term memory. *Id.* Schiff noted Corder's testimony before the ALJ was precise and that he used multi-syllable words. R. 520.

## 3. Vocational Testimony

James Ranke testified as a vocational expert during the May 7 and July 17, 2003 hearings before the second ALJ. R. 521-28. The ALJ posed familiar hypotheticals to Ranke. The ALJ asked

Ranke to consider the employment prospects for a 35-45 year-old man with an eleventh grade education, but who could only read at the third grade level and perform math at the fifth grade level, with Corder's previous work experience, who could lift up to 20 pounds occasionally, 10 pounds frequently, and sit, stand, or walk as required with no more than occasional bending to the floor. R. 522. She added the additional *caveat* that the hypothetical employee could not perform detailed or complex tasks that required more than simple operations, in a setting with no pulmonary irritants. *Id.* Ranke responded that a person with these limitations could perform food preparation jobs, library clerk positions, mail clerk positions, packing positions, and some assembly jobs. *Id.* As the ALJ refined the hypothetical, she limited the hypothetical employee's ability to sit or stand without changing positions. This narrowed the number of jobs available. R. 524-25.

Ranke was recalled to testify on July 7 to consider additional limitations on the hypothetical employee's mental ability. R. 532-48. Ranke was asked to consider sedentary jobs with a specific vocational preparation of two. R. 536. Ranke testified that an employee with physical restrictions and a vocational listing of two was capable of employment as an order clerk, for which there were 650 jobs available in the nine county Chicago area. *Id.* Ranke further noted that 6,000 sedentary assembler jobs were available to a worker with a GED of 3 to 4. R. 539-40. Ranke explained that the Dictionary of Occupational Titles, his resource, did not specifically enumerate the number of order clerk positions available for an employee with a GED listing of two, but that the number was based on his experience. *Id.*

## DISCUSSION

The second ALJ found Corder retained the residual functional capacity to perform a limited range of light work. Corder contends the Commissioner's findings are faulty and are unsupported

by substantial evidence. Specifically, he asserts that the Commissioner did not properly consider his functional limitations as required by this court's remand instructions.

1.  **Standard of Review**

Judicial review of the Commissioner's final decision is limited. The role of the reviewing court is to determine whether substantial evidence in the record as a whole supports the Commissioner's decision to deny benefits. 42 U.S.C. § 402(g); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the record, the court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute its judgment for that of the Commissioner. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The substantive standards for evaluating an SSI claim are identical to those for disability benefits. *Donahue v. Barnhart*, 279 F.3d 441, 443 (7th Cir. 2002).

To qualify for benefits, Corder must establish the existence of a medically determinable physical or mental impairment that can be expected to last continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). To demonstrate eligibility, Corder must show his impairments were severe and that they rendered him unable to engage in substantial gainful activity in the national economy. 20 C.F.R. § 404.1505. A physical or mental impairment is "an impairment that results from anatomical, physiological abnormalities which are demonstrable by medically acceptable clinical laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner follows a five-step process to determine whether Corder is disabled: (1) whether Corder is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether Corder could perform his

past work; and (5) whether Corder is capable of performing any work in the national economy. 20 C.F.R. § 404.1520. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The Commissioner must evaluate the claim sequentially, and a conclusive finding at any step that the claimant is or is not disabled is dispositive. 20 C.F.R. § 404.1520(a)(4). Corder's claim progressed to step 5. At that time, the burden shifted from Corder to the Commissioner to demonstrate that Corder can successfully perform a significant number of jobs in the national economy. *Young*, 362 F.3d at 1000. The Commissioner's written decision must minimally articulate the rationale behind the decision to deny benefits. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### 2. The ALJ Decision on Remand

On remand, the ALJ was charged with considering Corder's residual functioning capacity with respect to sitting, standing and walking; the impact of Corder's mental impairments on his residual functional capacity; and how Corder's physical and mental impairments impact his ability to perform light work. *Corder*, 2001 WL 477210 at *13. The ALJ found Corder was currently unemployed, that his impairments significantly limit his ability to perform basic work activities, that his impairments do not meet or equal one of the impairments listed in the SSA regulations, and that he was incapable of performing his past relevant work. R. 478. At step 5, the ALJ found Corder's medically determinable impairments preclude him from "lifting more than 20 pounds occasionally or more than 10 pounds frequently; understanding, remembering and/or carrying out more than simple instructions; and performing jobs in environments containing any respiratory irritants in concentrated levels." *Id.* The ALJ rejected further physical limitations on Corder's residual functional capacity because they were not justified by objective medical evidence. R. 475-76. She explained that all medical reports suggesting Corder was incapable of walking or sitting for long

8

periods of time were based on Corder's personal claims of pain, not medical findings. *Id.* She found Corder's claims of severe pain incredible.[1] R. 473.

Corder argues that the ALJ failed to properly consider his functional limitations as required by this court's remand instructions. The court's previous decision is the law of the case, and governs further proceedings. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). The court's previous decision vacated and remanded the Commissioner's decision partly because the original ALJ failed to minimally articulate his basis for finding Corder capable of light work. *Corder*, 2001 WL 477210 at *13. The first ALJ's ruling did not demonstrate that Corder's residual functional capacity had been given proper "function-by-function" assessment. *Corder*, 2001 WL 477210 at *10. The ALJ merely concluded Corder was capable of light work without building an accurate and logical bridge from the evidence to support his findings. *Clifford*, 227 F.3d at 872. Corder argues that the second ALJ committed the same error on remand by failing to discuss in detail his ability to sit, stand, or walk for long periods of time. *Corder*, 2001 WL 477210 at *10; 61 Fed. Reg. 34474, 34475 (July 2, 1996) ("Social Security Ruling 96-8p").

The ALJ analysis on remand is detailed. The ALJ explains that many of the limitations Corder believes are appropriate rely on Corder's self-diagnosis of his pain, not on objective medical facts. R. 473. This court's previous decision did not hold that the minimal articulation requirement bound the Commissioner to make explicit findings as to precisely how long Corder could stand or

---

[1]The ALJ's discussion of Corder's credibility, as it relates to pain, is comprehensive. She notes that his in court descriptions are inconsistent with the descriptions he gave to his doctors. R. 473. She further notes that he failed to continuously complain of and seek treatment for pain. R. 473. She also notes that Drs. Feinberg and Popli found that Corder's pain symptoms were inconsistent with his physical injuries. These are "specific reasons" justifying her credibility finding. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003).

9

sit during an eight-hour period. *Corder*, 2001 WL 477210 at *10. The passage cited by Corder merely illustrated that the original ALJ failed to consider or discuss evidence in the record suggesting Corder's ability to stand or walk is limited. *Id.* On remand, the ALJ assessed Corder's capacity to walk, sit, crouch and lift. R. 476. She found there was no medical evidence suggesting Corder's ability to walk, stand or sit on the job was limited in any way. *Id.* This expression was coupled with the ALJ's finding Corder could lift up to 20 pounds occasionally and 10 pounds frequently. R. 478.

Neither Seventh Circuit authority nor the regulation Corder cites in support of his proposition requires the Commissioner to specifically enumerate the length of time Corder can sit, stand or walk. SSR 96-8p requires the Commissioner to "consider," not articulate Corder's residual functional capacity on a function-by-function basis. SSR 96-8p's "Narrative Discussion Requirements" instructs the Commissioner to discuss the "individual's ability to perform sustained work activities in an ordinary work setting on a regular basis." Had the ALJ found Corder's ability to sit, walk or stand was somehow compromised, exposition of Corder's particular faculties would be in order. *See Embry v. Barnhart*, No. 02 C 3821, 2003 WL 21704425, at *8-9 (N.D. Ill. July 18, 2003). However, Corder's argument overlooks the obvious: the ALJ on remand *did* discuss Corder's ability to sit, stand and walk. She found Corder had no limitations. R. 473. This conclusion is substantially supported by the record. *See* R. 380-83, 722-25.[2] Corder's contention that the ALJ obdurately ignored this court's remand order lacks merit.

---

[2]The ALJ fully compared the various medical opinions dealing with Corder's back problems and found that the opinions urging significant work limitations were based on unreliable, non-medical data: Corder's assertions of pain. R. 473.

10

### 3. Corder's Mental Capacity

On remand, the ALJ found Corder was capable of performing a limited range of light work, provided that he was not required to understand, remember or carry out more than simple instructions. R. 478. Corder contends that the ALJ's finding he was able to carry out more than one and two-step tasks lacks support, and that the ALJ's determination Corder was able to perform all "simple tasks" – including those requiring more than two-step processes – was impermissibly based on her own medical judgment.

An ALJ cannot substitute her judgment for that of a doctor by independently evaluating medical evidence. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ's finding Corder was capable of simple tasks beyond GED level 1 principally relies on her assessment of Corder's credibility. The ALJ noted Corder's first mental evaluation by Dr. Beebe, which found Corder possessed average intelligence, considered Corder's memory and communication skills, as well as his adequate performance on serial 3's. R. 469. The ALJ further explains that examinations conducted by Diamond and Gardner are unreliable because they were requested by Corder's attorney and because she doubts Corder gave his best efforts during the examinations. R. 469-71.

In attempting to resolve the issues identified for remand, the ALJ criticizes the sincerity of Corder's efforts before Diamond and Gardner, and gives a detailed synopsis of Corder's in-court behavior. R. 469-71. The ALJ contends Corder's aptitude scores before Diamond and Gardner are skewed lower because he intentionally performed poorly to bolster his chance of receiving SSI. *Id.* Although the ALJ's credibility assessments are entitled to deference, the ALJ's finding Corder was capable of more than one or two-step processes is not supported by sufficient evidence. The only medical examiner testifying at Corder's hearing, Schiff, agreed with previous evaluations diagnosing

Corder as possessing borderline intellectual ability, and flatly stated that in his opinion, Corder "could probably do one-step operation, two-step operation. They do not require intensive concentration or long-term memory, and I draw the line at that point." R. 518. In rejecting this statement, the ALJ concluded Schiff's opinion did not address Corder's "maximum capacity." R. 474. Yet, if that is the case, than no medical evidence cited in the ALJ's opinion addresses Corder's maximum aptitude.

Furthermore, despite her lengthy explanation of her in-court experience with Corder, the ALJ points to no authority suggesting Corder is capable of more than two-step operations. *See Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir. 1986) ("Neither the Appeals Council nor this court is qualified to make [a] medical judgment about residual functional capacity based solely on bare medical findings"). Nor does the ALJ's cursory citation of Beebe's report – stating that Corder had average intellectual aptitude – explain the reason Beebe's report is more reliable than the conclusions of Dr.'s Schiff, Diamond and Gardner. *Corder*, 2001 WL 477210 at *11-12. Indeed, only Beebe's report supports the ALJ's conclusion. In his review of Beebe's report, Schiff concluded Corder was capable of no more than two-step operations. R. 517-18. The ALJ's reason for rejecting these conclusions is her belief Corder sandbagged his examinations with Diamond and Gardner and that his in-court testimony was precise; this reason is undermined by Diamond and Gardner's reports. R. 469-71. Diamond and Gardner both noted that they believed Corder tried his best during their evaluations. R. 161, R. 263. Schiff found Diamond and Gardner's reports were consistent. R. 517, 520. Moreover, despite the fact that he too found Corder's in-court testimony precise, Schiff found Corder was limited to one and two-step operations. R. 517-18.

The ALJ's in-court experience with Corder is not a substitute for a medical opinion. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). Moreover, the ALJ's suggestion that Diamond and Gardner's examinations are flawed because they were taken under questionable circumstances was previously rejected. *Corder*, 2001 WL 477210 at *11-12. The ALJ fails to build a logical bridge between the record evidence and her conclusion Corder is capable of performing simple tasks requiring more than two steps. *Corder*, 2001 WL 477210 at *12; *Clifford*, 227 F.3d at 872. Her review that Corder's testimony was precise and used multi-syllabic words is not adequate justification for rejecting specific medical authority and finding that Corder was capable of more sophisticated employment than suggested by the medical examiners. *Id.*

The record contains conflicting statements regarding Corder's non-exertional residual functional capacity. There are unresolved factual issues that preclude a reliable decision regarding Corder's eligibility for benefits. Based on this record, a second remand is required. *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). On remand, the ALJ must fully consider the evidence concerning Corder's non-exertional limitations in an assessment of Corder's residual functional capacity.

## CONCLUSION

The ALJ's residual functional capacity finding is not supported by substantial evidence. Therefore, this case is remanded to the Social Security Administration for further proceedings.

May 3, 20004

ENTER:

Suzanne B. Conlon
United States District Judge

13