IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID E. CORDER, | ) |
| Plaintiff, | ) |
| | ) Case No. 03 C 9308 |
| v. | ) |
| | ) Judge Suzanne B. Conlon |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) Magistrate Judge |
| | ) Martin C. Ashman |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, David E. Corder, brings this motion for attorney's fees and costs pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412(d), for the prosecution of his Social Security appeal and for this motion for fees and costs. This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 for a Report and Recommendation. For the following reasons, this Court recommends granting Corder's motion.

### I. Background

Corder applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in 1993. (R. at 37-40, 41-44.) The Commissioner of Social Security Administration ("the Commissioner") denied his claims and Corder requested a hearing before an Administrative Law Judge ("ALJ"). Following a hearing, the ALJ denied Corder's claims. The Appeals Council set this decision aside on April 2, 1997. On remand, the ALJ issued a second decision finding that Corder was not disabled. (R. at 10-27.) Once again, Corder sought review,

After the Appeals Council denied Corder's request for review, he filed a complaint in the Northern District of Illinois. This Court reversed the Commissioner's final decision and remanded the matter for further proceedings to make a finding regarding the extent of Corder's impairments, the extent to which those impairments impact his ability to work, and the work available given those limitations. *Corder v. Halter*, No. 00 C 2714, 2001 WL 477210, at *13 (N.D. Ill. May 4, 2001) (*"Corder I"*). On remand, Corder's claim was assigned to another ALJ. The ALJ held two administrative hearings; she heard testimony from Corder and a medical and vocational expert. (R. at 482-529, 530-48.) The ALJ denied Corder's application for SSI. The Appeals Council declined jurisdiction, leaving the ALJ's decision as the final decision of the Commissioner. After the Appeals Council denied Corder's request for review, Corder filed a complaint in the Northern District of Illinois seeking judicial review of the final decision of the Commissioner denying him SSI. Corder argued that the ALJ erred by not properly considering Corder's functional limitations as required by this Court's original remand instructions, by mischaracterizing the opinion of Dr. Schiff, the medical expert, and by improperly assessing Corder's credibility. On May 10, 2004, this Court again reversed the Commissioner's final decision and remanded the matter for further proceedings to fully consider the extent of Corder's non-exertional limitations in an assessment of Corder's residual functional capacity ("RFC"). *Corder v. Barnhart*, No. 03 C 9308, 2004 WL 1381125, at *7 (N.D. Ill. May 10, 2004) (*"Corder II"*). This application for fees followed.

## II. Discussion

The EAJA provides that a court shall award attorney's fees to a party who prevails against the United States in certain civil actions, including proceedings for judicial review of an agency action, unless the court finds that the position of the United States was substantially justified or that special circumstances would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The movant bears the burden of showing that he prevailed in the civil action. If the burden is met, the United States must show that its position was substantially justified to avoid the imposition of fees. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004); *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994).

Corder asserts that he is a prevailing party by virtue of obtaining a sentence-four remand, citing *Shalala v. Schaefer*, 509 U.S. 292 (1993). The Commissioner does not dispute this and neither do we. *See Schaefer*, 509 U.S. at 300-02; *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980 (7th Cir. 1999); *O'Connor v. Shalala*, 23 F.3d 1232, 1234 (7th Cir. 1994). Accordingly, our inquiry focuses on whether the Commissioner has shown that her position was substantially justified. In making this inquiry, we are mindful that the "Commissioner's Position" encompasses both her pre-litigation conduct at the agency level and her litigation conduct before this Court. *Golembiewski*, 382 F.3d at 724; *Cummings v. Sullivan*, 950 F.2d 492, 496 (7th Cir. 1991). An ALJ's decision constitutes part of the agency's pre-litigation conduct. *Golembiewski*, 382 F.3d at 724. Rather than make conclusions as to each of these temporally distinct elements, however, the EAJA requires this Court to arrive at a single conclusion that accommodates the entire civil action. *Id.*; *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1081 (7th Cir. 2000).

Further, a finding that a party prevailed in federal court does not automatically permit that party to recover fees. *Fed. Election Comm'n v. Rose*, 806 F.2d 1081, 1087 (D.C. Cir. 1986) ("[A]t the EAJA stage, the court is not wedded to the underlying judgment on the merits in assessing either the Government's litigation position or its underlying conduct.") Substantial justification means "justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations and citations omitted). In other words it means a reasonable basis both in law and fact. *Id*. It is well settled that a party's position can be substantially justified but incorrect, as long as a reasonable person could think that the position was correct. *Golembiewski*, 382 F.3d at 724 (citing *Underwood*, 487 U.S. at 566 n.2). Thus, in order to prevail in the Seventh Circuit, the government must show that its position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory propounded. *Id*.

Corder now seeks legal fees. Corder challenges the government's pre-litigation position, arguing that, with regard to his mental health limitations, the ALJ's decision lacked a reasonable basis in truth for the facts alleged and did not make a reasonable connection between the facts alleged and the legal theory propounded. (Pl.'s Mem. at 3-4.) Specifically, Corder alleges that the ALJ improperly relied upon her in-court experience when she rejected Drs. Gardner and Diamond's evaluations and when she determined that Corder maintained the capacity to perform work requiring more than one or two-step processes. (Pl.'s Mem. at 3.) Corder also challenges the Commissioner's litigation position as substantially unjustified, claiming that she failed to address the inappropriate manner in which the ALJ rejected Dr. Schiff's expert testimony. (Pl.'s

Mem. at 3-4.) The Commissioner counters that, given the comprehensive discussion and supporting (though not substantial) evidence in the record, the Commissioner's final decision was substantially justified and the government had a rational basis for defending it. (Def.'s Mem. at 3.)

## A. The Commissioner's Position Was Not Substantially Justified.

This Court reversed and remanded this case for a second time because unresolved factual issues precluded a reliable decision regarding Corder's non-exertional RFC. *Corder II*, 2004 WL 1381125, at *7. In our original remand, we advised the Commissioner to go beyond the Medical Vocational Guidelines Grid and consult a vocational expert ("VE") if she found Corder's non-exertional limitations might substantially reduce the range of work he can perform. *Corder I*, 2001 WL 477210, at *13. Although she did consult a VE, the second ALJ rendered that consultation meaningless by substituting her own independent medical findings about Corder's RFC for those of doctors and medical experts. *Corder II*, 2004 WL 1381125, at *7. *See also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ may not make independent medical findings regarding whether activities are consistent with medical diagnosis). Specifically, the ALJ failed to perform the qualitative analysis of Drs. Gardner and Diamond's medical opinions deemed "critical" by Magistrate Judge Schenkier in *Corder I*, rejected the medical expert's opinion that Corder was capable of one and two-step operations only, and concluded that Corder could perform simple tasks requiring more than two steps based on her own observations and credibility assessments and Dr. Beebe's report. *Corder II*, 2004 WL 1381125 at *6-7. Significantly, Dr. Schiff had (1) reviewed Dr. Beebe's report and found Corder capable of one or

two-step operations only. (2) experienced Corder's in-court demeanor first-hand and found Corder capable of one or two-step operations only, and (3) endorsed Drs. Gardner and Diamond's determination that, despite his best efforts, Corder performed poorly on their IQ examinations, scoring a low-IQ with borderline intellectual ability. (R. at 517-18, 520.) Because the ALJ is not qualified to make independent medical findings and because the record contained conflicting statements regarding Corder's non-exertional RFC and unresolved factual issues precluding a reliable decision, the Court reversed and remanded the second ALJ's decision. *Corder II*, 2004 WL 1381125, at *7.

It is a well-established legal principle that, if an ALJ's decision lacks an adequate factual basis, then the Commissioner's position in relying upon it cannot be substantially justified. *Elster v. Barnhart*, No. 01 C 4085, 2003 WL 21799938, at *2 (N.D. Ill. July 29, 2003) (*citing Corder v. Massanari*, No. 00 C 2714, 2001 WL 1355986, at *2 (N.D. Ill. Nov. 1, 2001); *Scott v. Barnhart*, No. 99 C 4651, 2003 WL 1524624, at *4 (N.D. Ill. Mar. 21, 2003). When this Court found that unresolved factual issues preclude reliable decision-making, we found that the ALJ's decision lacked an adequate factual basis. Unresolved factual issues include both Corder's non-exertional RFC and accurate analysis of Corder ability to perform work. It follows that the Commissioner's decision was not grounded in either a reasonable basis in truth for the facts alleged nor a reasonable connection between the facts alleged and the legal theory propounded. Accordingly, the Commissioner's pre-litigation position was not substantially justified.

The Commissioner's litigation position was not substantially justified either. In her motion for summary judgment, the Commissioner defends the ALJ's reliance on the VE testimony, despite the fact that the VE identified jobs that required more than one or two-step

operations. The Commissioner argues that it does not matter that the VE did not know which of the identified jobs required only one and two-step operations because the VE considered sources other than the Dictionary of Occupational Titles ("DOT") (namely his own experience). Under SSR 00-4p, a reasonable explanation for an apparent conflict between VE testimony and the DOT would be that the DOT contains information on most, but not all, occupations. (Def.'s Mem. Supp. Mot. Summ. J. at 23.) Because the ALJ elicited this testimony from the VE, the Commissioner concludes that the ALJ complied with the requirements of SSR 00-4p. (Id.) The Commissioner also argues that *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (62 IQ perhaps compatible with some unskilled work), and *Orlando v. Heckler*, 776 F.2d 209, 214-15 (7th Cir. 1985) (75 verbal IQ consistent with "simple unskilled tasks"; step four decision), support the ALJ's conclusion that people with borderline intelligence can still perform some unskilled work. (Id.)

The Commissioner's arguments are too narrow. As stated above, the ALJ relied upon underlying assumptions that are inconsistent with the Commissioner's policies when she substituted her independent medical diagnosis for those of medical experts and doctors. As a result, the ALJ's RFC determination was flawed and her hypotheticals to the VE did not limit Corder to one and two-step operations.[1] Because the hypotheticals posed to the VE did not include all the limitations supported by medical evidence in the record, the ALJ could not rely on the VE testimony. *See Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) (ALJ can only rely on VE testimony where hypotheticals include all limitations supported by medical evidence in the record); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (same). Furthermore, while

---

[1] The medical expert limited Corder to one and two-step operations. (R. at 518.)

*Fisher* and *Orlando* may stand for the proposition that some individuals with borderline intelligence are capable of performing some unskilled work, those cases cannot substitute for the specific findings in this case. Shifting the focus to Corder's actual IQ is too narrow an approach. In her motion for summary judgment, the Commissioner does not address the flawed hypotheticals or RFC and relies on cases that do not support her legal theory. It follows that the Commissioner's litigation position did not have a reasonable basis in fact or law and was not substantially justified.

The Commissioner correctly points out that this Court upheld the ALJ's assessment of Corder's exertional RFC and Corder's complaints of pain. As to these claims, the Court rejected Corder's allegation that the ALJ was obdurate with regard to Magistrate Judge Schenkier's remand order. *Corder II*, 2004 WL 1381125, at *6. However, the Court reversed and remanded the ALJ's non-exertional RFC analysis and we now find that analysis not substantially justified. Because the analysis of Corder's non-exertional functional capacity is determinative of the outcome of this case it warrants the EAJA's fee-shifting, despite the fact that the Commissioner prevailed on the pain and exertional components of this case. *See Golembiewski*, 382 F.3d at 724; *Hallmark*, 200 F.3d at 1081.

### B. Fees Requested are Reasonable.

In order to collect attorney fees under the EAJA, the prevailing party must, within thirty days of final judgment in the action, submit an itemized statement from any attorney representing or appearing in behalf of the party stating the actual time expended and the rate at which fees

were computed. 28 U.S.C. § 2412(d)(1)(B). Corder submitted his itemized statement within thirty days of final judgment in this action.

Corder claims his attorney spent 59.3 hours working on this appeal. Corder originally claimed 54.9 hours of attorney time and 0.8 hours of legal assistant time. (Pl.'s Mem. at 5-6.) In Corder's EAJA reply brief, Corder agreed to reduce that number by 1.5 hours because of an anticipated court appearance that never occurred and then sought to increase the total number of hours by 5.1 for time spent on the EAJA reply brief. (Pl.'s Reply at 4-5.) Thus, Corder now seeks 58.5 hours of attorney time and 0.8 hours of legal assistant time. The Commissioner argues that Corder should not be compensated for 59.3 hours of work. The Commissioner challenges Corder's March 24, 2004 time entry, arguing that it reflects 1.7 hours of work performed on a different case entitled "*Sayles*." (Def.'s Mem. at 4.) The Commissioner also makes the broader claim that Corder requests an unusually large award for a routine social security case. (Def.'s Mem. at 4-5.) Seeking to limit Corder's compensation to no more than forty hours, the Commissioner cites to cases from other circuits for the proposition that attorneys normally spend between twenty and forty hours on social security cases. (Id.)

This Court may not arbitrarily reduce hours requested. *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 647 (7th Cir. 1995); *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994). The Commissioner argues that Corder's claims are excessive, but specifically disputes only the March 24, 2004 entry. The Court accepts Corder's explanation that the name "*Sayles*" does not refer to work on a separate case but rather to a case cited in Corder's

brief." (Pl.'s Reply at 4), so the Court does not reduce or eliminate the March 24, 2004 entry. The remainder of Corder's hours do not appear excessive. According to his itemized time sheet, Corder spent an unextraordinary thirty-four hours briefing his summary judgment motion and response. *see Stringer v. Apfel*, No. 97 C 1223, 1998 WL 774138, at *3 (N.D. Ill. Oct. 29, 1998) (finding thirty-five hours not an unusually high number of hours for *briefing* a social security case), in a case involving a voluminous seven hundred and sixty-nine page record. *See Palmer v. Barnhart*, 227 F. Supp. 2d 975, 978 (N.D. Ill. 2002) (working forty-eight hours on a social security case is not unusual and is justified where "voluminous" record contains four hundred and fifty-nine pages).[3] The 5.1 hours Corder spent on his EAJA reply brief is also reasonable. *See Wirth v. Barnhart*, 325 F. Supp. 2d 911, 918-19 (E.D. Wis. 2004) (5.8 hours on eight page EAJA reply brief); *Samuel v. Barnhart*, 316 F. Supp. 2d 768, 783 n.6 (E.D. Wis. 2004) (five hours spent on EAJA reply brief). The 59.3 hours Corder requests for work performed on this case is not otherwise unusual. *Cuevas v. Barnhart*, No. 02 C 4336, 2004 WL 3037939, at *1-2 (N.D. Ill. Dec. 30, 2004) (awarding 56.5 hours of attorney work and three hours of legal assistant work for social security case); *Willis v. Barnhart*, No. 99 C 3437, 2002 WL 31779907, at *3 (N.D. Ill. Dec. 11, 2002) (finding 56.25 hours reasonable and appropriate amount of time and resources for

---

[2] Corder's March 24, 2004 entry for 1.7 hours reads, "final review and modification of brief, including adding section on *Sayles* and ALJ not considering other limits which vocational expert said established no jobs. Conference with assistant about filing brief, getting set up for motion and copy to chambers." (Pl.'s Mem. at Ex. B.) The case *Sayles v. Barnhart*, No. 00 C 7200, 2001 WL 1568850 (N.D. Ill. 2001), is cited on page fourteen of Plaintiff's Memorandum in Support of Motion for Summary Judgment.

[3] That Mr. Barry A. Schultz represented Corder throughout all of the relevant proceedings, and may have been familiar with much of the voluminous record prior to the instant litigation does not change the Court's decision.

a social security case); *Rice v. Apfel,* 16 F. Supp. 2d 971, 975 (N.D. Ill. 1998) (finding 62.84 hours over sixteen months reasonably consistent with social security cases). Thus, the Court refuses to reduce the hours requested.

Corder seeks to be compensated $150 per hour for attorney's work and $85 per hour for legal assistant's work. These rates are based on the EAJA allowance for payment of attorney fees at $125 per hour as of 1996 and adjustment based on the cost of living as defined by the Consumer Price Index ("CPI"). *See* 28 U.S.C. 2412(d)(2)(A)(ii) (attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living justifies a higher fee). Corder arrives at the $150 per hour rate by increasing $125 by 20%, in line with a roughly 20% increase in the cost of living since March 1996, per the CPI. (Pl.'s Mem. at 5.) Determining rates by using the annual CPI for each of the years in question is appropriate. *see Marcus,* 17 F.3d at 1040, and the Commissioner does not dispute Corder's rates of $150 per hour rate for attorneys and $85 per hour for legal assistants. Furthermore, these rates are in-line with similar cases. *see Cuevas,* 2004 WL 3037939, at *1-2 ($147.50 per hour for attorney's work and $85 per hour for legal assistant's work); *Davis v. Barnhart,* No. 03 C 50276, 2004 WL 1899978, at *4 (N.D. Ill. Aug. 20, 2004) ($148.71 per hour for attorney's work); *Wirth,* 325 F. Supp. 2d at 919 ($147.97 per hour for attorney's work); *Samuel,* 316 F. Supp. 2d at 783 ($148.75 per hour for attorney's work and $85 per hour for legal assistant's work), and the Court finds them to be reasonable. Thus, the Court recommends awarding Corder 58.5 hours for attorney's work at a rate of $150 per hour ($8775.00) and 0.8 hours of legal assistant's work at $85 per hour ($68.00), for a total of $8843.00.

### III. Conclusion

The Court recommends granting Corder's motion for an award of fees pursuant to the EAJA. The Court further recommends that the amount of $8843.00 be paid directly to Corder's attorney, Barry A. Schultz.

Dated: January 20, 2005.

**MARTIN C. ASHMAN**
United States Magistrate Judge

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Suzanne B. Conlon within ten (10) days after service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b). Failure to object will constitute a waiver of objections on appeal.

Copies have been mailed to:

BARRY A. SCHULTZ, Esq.
The Law Offices of Barry A. Schultz, P.C.
1609 Sherman Avenue
Suite 207
Evanston, IL 60201

Attorney for Plaintiff

MS. ANNE LIPNITZ
Special Assistant United States Attorney
200 West Adams
30th Floor
Chicago, IL 60606

Attorney for Defendant